UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:04-CR-56-TS |
| | ) | |
| ALLAN BATES | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion to Suppress Audio and Video Recordings [DE 29] and the Defendant's Motion to Suppress Phone Conversation [DE 31].

**BACKGROUND**

The Grand Jury charged the Defendant, Allan Bates, with knowing and intentional distribution of more than 500 grams but less than 5 kilograms of a mixture or substance containing a detectable amount of cocaine. On December 3, 2004, the Defendant filed six motions seeking to exclude from trial evidence that the United States may wish to use against him. The United States filed its responses on January 12, 2005, and the Defendant replied on January 24, 2005.

On February 10, 2005, the Court denied two of the Defendant's motions and set an evidentiary hearing on the Defendant's Motion to Suppress Audio and Video Recordings and Motion to Suppress Phone Conversation. On September 7, 2005, the Court conducted an evidentiary hearing. The Defendant was present and represented by attorneys Jack Frielander and Harold Myers. The government was represented by Assistant United States Attorney David Miller. At the conclusion of the hearing, the Court took the Motions under advisement and the parties were given additional time to file briefs.

On October 21, 2005, the Defendant filed his post-hearing brief challenging the Court's

limitation of his cross-examination of Detective Thompson and his examination of McVoy. He requested the Court to reopen the hearing to permit further questioning. On November 7, the government filed its brief opposing the Defendant's request to reopen the hearing and arguing that the Motions to Suppress should be denied.

## FINDINGS OF FACT

On August 20, 2004, at 10:15 p.m., the police arrested Jeremy McVoy for dealing cocaine and took him to the police station. DEA agent Detective Thompson interviewed McVoy and at 10:50, McVoy signed a waiver of advice form. After his arrest and before he talked to Detective Thompson, McVoy had decided in him own mind to cooperate with the police. Thompson did not make any threats, promises, or other inducements to McVoy. McVoy was very cooperative and told Detective Thompson that he was expecting a delivery of cocaine from his supplier, the Defendant, Allen Bates. He said he could get two kilograms of cocaine from the Defendant if he had $17,000 in cash. Detective Thompson, along with Detectives Ray and Wagner, obtained the money and went with McVoy to his house.

At McVoy's home, Detective Ray set up a hidden video and audio recorder in the living room where McVoy expected the drug deal to take place. McVoy was aware of the video and audio recording and agreed to it. McVoy was given a body wire, and Detectives Ray, Thompson, and Wagner went to a back room to wait for the Defendant's arrival.

At about 8:00 a.m., McVoy called the Defendant and asked him to come over. McVoy recorded the telephone conversation on a handheld voice recorder. Ten minutes later, the Defendant drove up to McVoy's house, rang the bell, and went back to his pickup truck. McVoy then opened

2

the garage and the Defendant drove his truck inside.

The Defendant walked into McVoy's residence from the garage, carrying a brown shopping bag. He placed the bag on a chair in the living room. McVoy went into the kitchen where he got the $17,000 and gave the money to the Defendant. McVoy then picked up the brown shopping bag and went into the garage.[1] When he returned to the living room, he talked with the Defendant for about half an hour before leaving. The conversation and the Defendant's actions were recorded by the audio/video recording device set up in McVoy's home.

## DISCUSSION

The Defendant urges the Court to suppress the recorded telephone conversation between him and McVoy on the morning of his arrest and the video and audio recording of the events while he was in McVoy's house. The core of the Defendant's claims is that McVoy did not consent to the various recordings of their conversations and that he had a reasonable expectation of privacy in McVoy's home.

**A. Consent**

The government argues that McVoy provided his consent to intercept the oral communications between himself and the Defendant. The Defendant contends that McVoy's consent was vitiated because it was the result of duress and false promises.

Title 18, United States Code, § 2511, prohibits the interception and disclosure of wire, oral, or electronic communications. However, subsection (2)(c) provides an exception for a person acting

---

[1] According to McVoy, he usually put the drugs in his car when he received them, so that he could take them to his storage facility.

under color of law if one of the parties to the communication has given prior consent to the interception of the communication. 18 U.S.C. § 2511(2)(c). In addition, such an interception does not violate the Fourth Amendment. *United States v. White*, 401 U.S. 745, 753 (1971).

The evidence supports the government's position that the police did not threaten or coerce McVoy to obtain his consent to record his telephone conversation with the Defendant or to allow the police to videotape the events occurring in his home. The Defendant counters this evidence by maintaining that he was not allowed to develop his theory of coercion because the Court did not allow him to question McVoy about any promises the police made. Specifically, counsel asked McVoy if he had been promised that he would walk out of jail that night if he cooperated with the police. The government objected and the Court sustained on the grounds that the relevant inquiry was whether McVoy cooperated with the police and was aware of the recordings. Under the standard pronounced in *United States v. Horton*, 601 F.2d 319 (7th Cir. 1979), the receipt of benefits was not a part of this inquiry.

In *Horton*, the defendant challenged the admission of recordings between him and a government informant. He argued that the informant's consent was not voluntary because of the benefits he received for cooperating with the government. *Id.* at 321. The Seventh Circuit held that the "standard for showing that an informer consented to the recording of a conversation is different from the standard for showing that a defendant or a third party consented to a physical search." *Id.* "It will normally suffice for the Government to show that the informer went ahead with a call (or other recorded activity) knowing what the law enforcement officials were about." *Id.* (quoting *United States v. Bonanno*, 487 F.2d 654, 658 (2d Cir. 1973)). The court stated that, generally, any benefits that an informant might receive for cooperating with the government would not vitiate his

4

voluntary consent to the electronic recording of his conversations. *Id.* at 322 ("The case law is thus quite clear that an informant's consent cannot be rendered involuntary merely because the Government has extended benefits to the informant in exchange for his cooperation."). Once cooperation is established, unless there is some affirmative evidence of will-overbearing coercive threats, the participation in monitoring or recording a conversation in which the informant is a participant is merely incidental to the previously determined course of cooperation with the government. *Id.* at 323.

The evidence supports the conclusion that McVoy, by his own volition, agreed to cooperate with the police. Under the standard articulated in *Horton*, which is still good law in this Circuit, any benefits he received would not affect the validity of his consent. Therefore, the Court did not err in refusing to allow the Defendant to question McVoy about the benefits he received from the government. It would make no difference to the Court's analysis if McVoy was told he would walk out of jail that night for his cooperation.[2] The government met its burden to demonstrate consent when it established that McVoy knew what the government agents were about when they set up the recording equipment and provided him with a body wire. The Defendant has not presented any evidence to contradict that McVoy was fully aware that the government intended to record his drug transaction with the Defendant.

The recordings will not be suppressed on the basis that they violated the Fourth Amendment

---

[2] Benefits are distinguished from threats of prosecutorial action that have no realistic foundation. *Horton*, 601 F.2d at 322–23. The Defendant notes this distinction, but does not articulate how it applies to his case. The Defendant's claim that he was not allowed to fully examine what was promised to McVoy does not suggest that the government did not have a basis for arresting him for dealing cocaine and that any drug charges would have been without basis.

or 18 U.S.C. § 2511.

**B. Expectation of Privacy**

Additionally, the Defendant contends that the recordings should be suppressed because he had an expectation of privacy in McVoy's home. He argues that it was error for the Court to prohibit him from eliciting testimony regarding whether McVoy had a practice of having females at his house for the Defendant's sexual purposes. He submits that if this was true, and the Defendant regularly had sex in McVoy's home, he might have an expectation of privacy there. The Court stated that it would not allow the questioning unless the Defendant provided case law for the proposition that one gains an expectation of privacy when they have sex at another person's house on occasion. The Defendant did not provide any such authority, either at the time of the hearing or in his post-hearing brief.

"Government action amounts to a search when it infringes an expectation of privacy that society is prepared to accept as reasonable." *United States v. McDonald*, 100 F.3d 1320, 1324 (7th Cir. 1996). Temporary visitors to a residence do not enjoy Fourth Amendment protections. *Terry v. Martin*, 120 F.3d 661, 663 (7th Cir. 1997) (declining to extend protection afforded overnights guests to temporary visitors). The Defendant has not established that he, as a temporary visitor in McCoy's house, had an expectation or privacy, regardless of whether he ever engaged in sexual activities there.

**CONCLUSION**

For the foregoing reasons, the Defendant's Motions to Suppress [DE 29, 31] are DENIED. The Defendant's request to reopen the evidentiary hearing is DENIED. This cause is set for a Final Pretrial Conference on Monday, December 5, 2005 at 11:00 AM before Judge Theresa L. Springmann. A jury trial is scheduled for January 10, 2006 at 8:30 AM before Judge Theresa L. Springmann.

SO ORDERED on November 14, 2005

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT